IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HERMAN DOUGLAS, SR.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| | : | NO.  07-3925 |
| **JOEL OSTEEN, ET AL.** | : | |
| **Defendants.** | : | |

**MEMORANDUM AND ORDER**

**Tucker, J.**                                                                                                        **May  ___, 2008**

Presently before this Court are Defendants' Joel Osteen and Hachette Book Group USA, Inc.'s Motions to Dismiss (Docs. 7 and 23).[1]  For the reasons set forth below, upon consideration of Defendants' Motions, Plaintiff's Response (Doc. 9), and Defendants' Reply and Accompanying Exhibits (Docs. 18 and 19), this Court will grant Defendants' Motions.

**BACKGROUND**

From the evidence of record, taken in a light most favorable to the Plaintiff, the pertinent facts are as follows.  In 1990, pro se Plaintiff, Reverend Herman Douglas, Sr., authored a book entitled *Prayer Power in the Eyes of Faith* for which he obtained copyrights in 1990 and 2006.[2] In 2004, Defendant Reverend Joel Osteen ("Osteen") authored and obtained a copyright for *Your*

---

[1] Because the Motions to Dismiss of Defendants Joel Osteen and Hachette Book Group USA, Inc. are substantively identical, the Court will consider the motions in tandem, Plaintiff's response to Defendant Osteen's motion as responsive to both motions, and Defendant Osteen's Reply as filed on behalf of both defendants.

[2] Although Plaintiff alleges that he obtained a copyright for *Prayer Power in the Eyes of Faith* in 1990 and again in 2006, the record reveals that Plaintiff obtained a copyright for his book in 2005 and a copyright for a second version of the same book in 2007.  Indeed, Plaintiff attaches to both his Amended Complaint and Response to Defendants' Motions a copyright registration for *Prayer Power in the Eyes of Faith* dated August 1, 2005.  Also, the U.S. Copyright Office's online database reveals copyrights for *Prayer Power in the Eyes of Faith* (registration number: TXu001254354, date of creation: 2000) issued to Plaintiff on August 1, 2005 and *Prayer Power in the Eyes of Faith: A Historical Examination of Prayer over Time and how Prayer Moved Mountains out of God's Children's Way* (registration number: TX0006596637, date of creation: 2005) issued to Plaintiff on June 11, 2007.  No other copyrights are registered for works which contain "Prayer Power in the Eyes of Faith" in their title.

*Best Life Now: 7 Steps to Living at Your Full Potential*.  Both Plaintiff's and Osteen's books focus on religious motivation, recounting biblical stories and setting forth motivational prayers and anecdotes.  On March 31, 2007, Plaintiff purchased a copy of Osteen's *Your Best Life Now* and noticed several similarities between his and Osteen's book, including use of the title of Plaintiff's book, the same biblical stories, similar words and expressions, and the same literary style.  Prior to filing suit, Plaintiff consulted with a "legal advisor," who, in April 2007, advised Plaintiff that the legal advisor was prepared to take Plaintiff's case.  Plaintiff did not retain but agreed to employ the legal adviser on an "as needed basis."  On a subsequent undisclosed date, Osteen's counsel contacted Plaintiff's legal advisor and threatened to file a motion to dismiss.

On September 24, 2007, Plaintiff filed suit against Osteen; Osteen's publisher, Hachette Book Group USA ("Hachette Book"); and unnamed Distributors and Retailers, alleging copyright infringement under the U.S. Copyright Act, 17 U.S.C. §§ 101-810; trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051-1129; violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 to 201-9.3; and tortious interference with contractual relations under Pennsylvania common law.  Defendants Osteen and Hachette Book now move to dismiss all counts for failure to state a claim.

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a

claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357. "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Id. (emphasis in original) (quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment. FED. R. CIV. P. 12(b).

## DISCUSSION

Defendants move to dismiss Plaintiff's copyright infringement, trademark infringement, UTPCPL violation, and tortious interference claims. The Court will grant Defendants' Motions.

### A.     Copyright Infringement

In Count I of the Amended Complaint, Plaintiff alleges that there are "substantial similarities" between Plaintiff's and Osteen's books sufficient to constitute copyright infringement, in violation of the Copyright Act, 17 U.S.C. § 501. Plaintiff specifically alleges that Defendants use of the title of his book,[3] the same biblical stories, similar words and expressions, and the same literary style amounts to copyright infringement. Defendants argue that Plaintiff has failed to state a claim because there is no copyright protection for titles of books, short phrases, or biblical stories which are in the public domain and use of the same literary style does not give rise to a finding of "substantial similarity."

To establish copyright infringement, the plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) (citing Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 548 (1985)). Copying may be demonstrated by either direct evidence or circumstantial evidence showing that the defendant had access to the copyrighted work and that the original and allegedly infringing works bare substantial similarities. Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207-08 (3d Cir. Pa. 2005). "Not all copying, however, is copyright infringement." Id. at 208 (quoting Feist Publ'ns, 499 U.S. at 361). To be actionable, the alleged copying must amount to an unlawful appropriation of protectable material.

---

[3] Plaintiff's Response asserts that Defendant used only a portion of the title of his book, namely the phrase "eyes of faith." For the reasons set forth infra, the short phrase "eyes of faith" is not subject to copyright protection.

4

Id.  Protectable material includes expressions of ideas, not the ideas themselves nor matters in the public domain.  See 17 U.S.C. § 102(b) (barring copyright protection for ideas); 37 C.F.R. § 202.1(b) (same); Kay Berry, 421 F.3d at 208 ("It is a fundamental premise of copyright law that an author can protect only the expression of an idea, but not the idea itself."); Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1232 n.23 (3d Cir. 1986) (noting that the plaintiff must show that the similarities between the works was due to copying and not because both parties drew from common sources that were part of the public domain); Ty, Inc. v. GMA Accessories, 132 F.3d 1167, 1170 (7th Cir. 1997) (same).  Stated differently, protectable material includes only the original elements of the plaintiff's work.  Kay Berry, 421 F.3d at 208.

Here, Plaintiff alleges that there exist substantial similarities in the words, expressions, biblical stories, and literary method used in the two books at issue in this case.  Plaintiff may not claim a copyright in the title of his book nor the individual words, expressions, or short phrases used therein.  The U.S. Copyright Office's regulations specifically exclude from copyright protection "words and short phrases such as names, titles, and slogans . . . ." 37 C.F.R. § 202.1(a); accord Southco v. Kanebrdige Corp., 390 F.3d 276, 286 (3d Cir. 2004); Kirkland v. National Broadcasting Co., 425 F. Supp. 1111, 1114 (E.D. Pa. 1976).  Similarly, Plaintiff may not claim a copyright in biblical stories, which are in the public domain.  See Torah Soft Ltd. v. Drosnin, 136 F. Supp. 2d 276, 286 (S.D.N.Y. 2001) (noting that the Bible is in the public domain, and therefore unprotectable); see also Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 710 (2d Cir. 1992) (stating material from the public domain "is free for the taking and cannot be appropriated by a single author even though it is included in a copyrighted work"); Whelan Assocs., 797 F.2d at 1232.  Lastly, there is no copyright protection for a particular

5

literary style.  See Whitehead v. CBS/Viacom, Inc., 315 F. Supp. 2d 1, 11 (D.D.C. 2004).

The two books at issue in this case are motivational religious books.  It is unsurprising that they contain the same biblical stories, similar expressions and phrases, and similar literary styles because the two books explore the same idea, namely religious motivation.  Further, nowhere in the Amended Complaint has Plaintiff alleged that Defendants copied any of the original elements of his work; Plaintiff merely alleges that both he and Osteen wrote motivational religious books, which contain common elements that are not subject to copyright protection.  See Kay Berry, 421 F.3d at 208 ( indicating that there is no copyright protection where the allegedly infringing work is substantial similar "merely because it contains elements that would be expected when two works express the same idea or explore the same theme").  As such, Plaintiff's copyright infringement claim will be dismissed for failure to state a claim.

**B.     Trademark Infringement**

In Count II, Plaintiff alleges that Osteen's use of the title of Plaintiff's book, *Prayer Power in the Eyes of Faith*, four times on one page of Osteen's differently-titled book, *Your Best Life Now*, constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a).[4]  In his Response to Defendants' Motions, Plaintiff asserts that Osteen used only a portion of the title of his book, namely the phrase "eyes of faith," ten times in Osteen's book.

---

[4] The Court notes that while Plaintiff's Amended Complaint cites to 15 U.S.C. § 1114, which governs infringement of registered trademarks, Plaintiff does not allege registration of the marks "Prayer Power in the Eyes of Faith" or "eyes of faith," nor does a search of the online database of the U.S. Patent and Trademark Office ("PTO") reveal any such registration.  Because Plaintiff neither claims nor owns registrations for the marks "Prayer Power in the Eyes of Faith' or "eyes of faith," the Court will not address Defendants' argument regarding Plaintiff's failure to allege ownership of a registered trademark.  Further, because Plaintiff proceeds pro se in this action, the Court will assume that Plaintiff intended to assert a claim under 15 U.S.C. § 1125(a), which governs infringement of unregistered trademarks.  See Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 248 (3d Cir. 1999) (indicating that the court is required to read a pro se litigant's pleadings liberally and to "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name") (citations omitted).

With respect to the title "Prayer Power in the Eyes of Faith," Defendants argue that it is not a protectable mark because has it not acquired secondary meaning.  Defendants also argue that Plaintiff's allegation (albeit false) that the phrase "prayer power in the eyes of faith" is used on one page of Osteen's differently-titled book could not, as a matter of law, support a finding of likelihood of confusion. With respect to the phrase "eyes of faith," Defendants argue that Plaintiff does not and cannot hold any trademark rights in the phrase and Plaintiff does not and cannot allege that Osteen's use of the phrase ten times in the text of his 305-page book creates a likelihood of confusion with Plaintiff's book, *Prayer Power in the Eyes of Faith*.

Under the Lanham Act, trademark infringement is defined as "use of a mark so similar to that of a prior user as to be likely to cause confusion, or to cause mistake, or to deceive." Freedom Card, Inc. v. JP Morgan, 432 F.3d 463, 469 (3d Cir. 2005).  Accordingly, the Lanham Act "protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion." Id.  To establish a claim for trademark infringement, the plaintiff must show that (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) defendant's use of the mark to identify goods or services is likely to create confusion regarding the origin of the goods or services.  A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000); Ford Motor Co. v. Summit Motor Prods, Inc., 930 F.2d 277, 291 (3d Cir. 1991).  Where the plaintiff claims an interest in an unregistered mark, the plaintiff must also show that he was first to adopt the mark in commerce, he has continuously used the mark in commerce since its adoption, and his unregistered mark is either inherently distinctive or has acquired secondary meaning.  Ford Motor Co., 930 F.2d at 292; see also Dranoff-Perlstein Assoc. v. Sklar, 967 F.2d 852, 855 (3d Cir. Pa. 1992) (stating that federal

trademark law extends protection to an unregistered mark only "if the public recognizes it as identifying the claimant's goods or services and distinguishing them from those of others") (quoting A.J. Canfield Co. v. Honickman, 808 F.2d 291, 296 (3d Cir. 1986)).

At issue here is whether Plaintiff has alleged ownership of a valid and protectable mark and likelihood of consumer confusion sufficient to state a claim for infringement under § 1125(a). Plaintiff claims an unregistered trademark in the title of his book, *Prayer Power in the Eyes of Faith*, which qualifies as a descriptive mark under the Lanham Act. See Herbko Int'l, Inc. v. Kappa Books, Inc., 308 F.3d 1156, 1163 n.2 (Fed. Cir. 2002) ("While titles of single works are not registrable, they may be protected under section 43(a) of the Lanham Act upon a showing of secondary meaning."). As a descriptive mark, Plaintiff must allege that the book title has acquired secondary meaning and the alleged use of the mark four times on one page of Osteen's book creates a likelihood of consumer confusion. Plaintiff's only claim of secondary meaning is an allegation that his book is available on the internet. Even assuming arguendo that Plaintiff's trademark in the title of his book has acquired secondary via the internet, Plaintiff has failed to allege any likelihood of confusion resulting from Osteen's alleged use of the mark four times on one page of his differently-titled book. See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000) (stating that "a likelihood of confusion exists when 'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark'") (quoting Dranoff-Perlstein Assoc., 967 F.2d at 862); Qwest Commc'ns Int'l v. Cyber-Quest, Inc., 124 F. Supp. 2d 297, 304 (M.D. Pa. 2000) (stating that a motion to dismiss a trademark infringement claim may be granted if "no reasonable factfinder could find a likelihood of

confusion on any set of facts that plaintiff could prove"). Further, while the Court, in considering Defendants' 12(b)(6) motion to dismiss, must accept as true all factual allegations in Plaintiff's Amended Complaint, the Court notes that Plaintiff's allegation of Osteen's use of the title of Plaintiff's book is patently false. See Plaintiff's Response at 8, 26 (stating that Osteen used only the phrase "eyes of faith"). Compare Defendant's Reply at Exhibits B and D (2005 and 2007 versions of Plaintiff's book, respectively), with id. at Exhibit E (Osteen's book).

     As to Plaintiff's claimed trademark in the phrase "eyes of faith," the Court also concludes that Plaintiff has failed to state a claim for infringement. To be protectable under the Lanham Act, a mark must be capable of distinguishing the plaintiff's product from those of others. Dranoff-Perlstein Assoc, 967 F.2d at 855. Plaintiff claims that the mark "eyes of faith" is descriptive of his book, *Prayer Power in the Eyes of Faith*. See Plaintiff's Response at 23-24 ("*Prayer Power in the Eyes of Faith* was written to show that you must see things through the eyes of God.") (emphasis omitted). As a descriptive mark, the phrase "eyes of faith" must acquire secondary meaning to be protectable under the Lanham Act. Dranoff-Perlstein Assoc, 967 F.2d at 855. Plaintiff has not only failed to allege secondary meaning, but the phrase "eyes of faith" is incapable of distinguishing Plaintiff's book from the products of others. For example, Amazon.com lists over fifty books which contain the phrase "eyes of faith" in their title and a rudimentary internet search reveals three websites which bear the phrase "eyes of faith" in their URL addresses, namely eyesoffaith.org, eyesoffaith.com, and eyesoffaith.net. Defendant's Reply at Exhibits E and F; see also id. at Exhibit H (showing use of phrase "eyes of faith" in two verses of the *Amplified Bible*: Psalm 13:3 and Hebrews 11:20). Like Plaintiff's book, *Prayer Power in the Eyes of Faith,* these books and websites focus on religious motivation, encouraging the reader

to view the applicable subject matter through the "eyes of faith." Because Plaintiff does not allege (and cannot prove) that the phrase "eyes of faith" distinguishes his book from the products of others, Plaintiff has failed to state a claim for trademark infringement under § 1125(a).

### C.  UTPCPL Violation

In Count II, Plaintiff also alleges that Defendants' actions violate the UTPCPL. Plaintiff does not identify which section of the UTPCPL Defendants have allegedly violated, but his claim is asserted within Count II, which he has designated "trademark infringement." See Plaintiff's Amended Complaint at 8. Accordingly, the Court will read Plaintiff's pleadings liberally to allege a violation of UTPCPL, 73 P.S. § 201-2(4)(iii), which makes it an unfair business practice to cause a likelihood of confusion as to the source of goods or services.[5] See Gabriel v. O'Hara, 368 Pa. Super. 383, 389 n.7 (Pa. Super. Ct. 1987) (stating that the UTPCPL's unfair or deceptive acts or practices provisions enumerated in 73 P.S. § 201-2(4) are based on the Lanham Act, 15 U.S.C. § 1125(a)). Because the elements of claims brought under § 1125(a) and the UTPCPL are so similar, the same legal standards apply. Nor-Am Chemical Co. v. O.M. Scott & Sons Co., No. 86-3810, 1987 U.S. Dist. LEXIS 6336, at *4 (E.D. Pa. July 14, 1987). As stated above, Plaintiff has failed to state a claim under § 1125(a). As such, Plaintiff's UTPCPL claim must also fail.

### D.  Tortious Interference with Contractual Relations

In Count III, Plaintiff asserts a tortious interference with contractual relations claim under Pennsylvania common law. Plaintiff alleges that counsel for Osteen contacted Plaintiff's "legal

---

[5] To the extent Plaintiff contends that Defendants' alleged copyright infringement violates the UTPCPL, that claim must fail as the Copyright Act preempts all state law claims. 17 U.S.C. § 301; see also Klitzner Industries, Inc. v. H. K. James & Co., 535 F. Supp. 1249, 1258 (E.D. Pa. 1982) (stating that "state regulation of unfair competition is preempted as to matters falling within the broad confines of the copyright clause of the United States Constitution") (citing Triangle Publications, Inc. v. Sports Eye, Inc., 415 F. Supp. 682, 683 (E.D. Pa.1976)).

advisor" and threatened to file a motion to dismiss. Defendants argue that Plaintiff has failed to state a claim because the conversation between defense counsel and Plaintiff's legal advisor was privileged, no "wrongful means" were employed, and Plaintiff has failed to allege that he had a contractual relationship with said legal advisor. To state a claim for tortious interference with contractual relations, the plaintiff must allege (1) the existence of a contractual relationship; (2) an intent on the part of the defendant to harm the plaintiff by improperly interfering with that contractual relationship; (3) the absence of a privilege or justification for such interference; and (4) damages resulting from the defendant's conduct. Small v. Juanita College, 682 A.2d 350, 354 (Pa. Super. 1996) (citing Triffin v. Janssen, 626 A.2d 571, 574 (Pa. Super. 1993); RESTATEMENT (SECOND) OF TORTS § 767). First, no contractual relationship between Plaintiff and his purported legal advisor. The Amended Complaint specifically states that the legal advisor offered to represent Plaintiff in the instant action but Plaintiff rejected the legal advisor's offer for a contractual relationship, choosing instead to seek the legal advisor's assistance on "as needed basis." See Amended Complaint at 9, 12. Next, pretrial communications between purported counsel are privileged under Pennsylvania law. Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. 1991); Smith v. Griffiths, 476 A.2d 22, 24 (Pa. Super. 1984). Lastly, Plaintiff merely alleges that defense counsel contacted Plaintiff's putative lawyer and advised that Osteen intended to file a motion to dismiss; such action does not constitute improper interference. See Adler, Barrish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1182 (Pa. 1978) (stating that improper interference is "purposeful interference without justification"); Small, 682 A.2d at 354 (stating that improper interference is determined by evaluating, inter alia, the nature of the actor's conduct, the relationship between the parties, and the social interests in protecting the

freedom of action of the actor) (quoting RESTATEMENT (SECOND) OF TORTS § 767). As such, Plaintiff has failed to state a claim for tortious interference with contractual relations.

## **CONCLUSION**

For the foregoing reasons, this Court will grant Defendants Osteen and Hachette Book's Motions to Dismiss. An appropriate order follows.